UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 11-CR-296 (DWF/LIB) |
| v. | **REPORT AND RECOMMENDATION** |
| JAMIE ALLAN GREENE, SR., | |
| Defendant. | |

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(A), upon the Defendant's motion to suppress statements, admissions, or answers he gave in response to questioning by law enforcement.  A Hearing was held on October 11, 2011, at which time the Defendant appeared personally, and by his attorney, Douglas Olson, and the Government appeared by Deidre Y. Aanstad, Assistant United States Attorney.

**I.    FACTS**

The government charged the Defendant with a violation of 18 U.S.C. § 113(a)(6), 1151 & 1153 for assault resulting in serious bodily injury.  On August 16, 2011, the Defendant gave himself up at the FBI office in Bemidji, MN at 9:00 p.m. pursuant to a warrant issued for his arrest.  At the FBI office, the Defendant met Special Agent Joe Ogden in the parking lot.  Agent Ogden brought the Defendant into the FBI office to interview him.  Regardless of whether the Defendant talked to Agent Ogden or not, law enforcement intended to arrest him that evening. Agent Ogden informed the Defendant that he would be arrested and go to jail that night.

In the FBI office, the Defendant followed Agent Ogden into the interview room.  Agent Ogden testified that he did not make any threats or promises to obtain the Defendant's presence

1

in the interview room. The interview room contained a table with chairs, a couch, and 2 doors. Agent Ogden along with two other law enforcement officers were present in the interview room. Two officers sat across from the Defendant and one sat in the corner of the room, but they left the doors to the room open. At this time, the Defendant was not in handcuffs. Law enforcement provided the Defendant with a beverage.

After obtaining a beverage for the Defendant, Agent Ogden advised the Defendant of his rights. Agent Ogden read the Defendant FD-395, the FBI's Advice of Rights form, which states:

> Before we ask you any questions, you must understand your rights.
>
> You have the right to remain silent.
>
> Anything you say can be used against you in court.
>
> You have the right to talk to a lawyer for advice before we ask you any questions.
>
> You have the right to have a lawyer with you during questioning.
>
> If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.
>
> If you decide to answer questions now without a lawyer present, you have the right to stop answering at any time.

(FD-395, Govt.'s Ex. 1). Agent Ogden testified that he read each line to the Defendant and then asked him if he had any questions about each sentence. He also explained to the Defendant that he did not need to speak to law enforcement or sign the waiver form. Nevertheless, the Defendant signed the form which stated that, "I have read this statement of my rights and I understand what my rights are. At this time, I am willing to answer questions without a lawyer present." According to Agent Ogden, he appeared to understand both his rights and the form.

Agent Ogden further testified that the entire interview took less than a half an hour. Moreover, the mood was relaxed and the Defendant appeared quiet and cooperative. In addition, Agent Ogden testified that the Defendant did not appear under the influence of drugs or alcohol. Agent Ogden also stated that law enforcement did not lie to the Defendant, make him any promises, or use any tricks to encourage him to provide a statement.

The Defendant asks the Court to suppress the statements made on August 16, 2011.[1] The Court considers the Defendant's request below.

## II.     STANDARD OF REVIEW

"[Miranda] prohibits the government from introducing into evidence statements made by the defendant during a custodial interrogation unless the defendant has been previously advised of his [F]ifth [A]mendment privilege against self-incrimination and right to an attorney." United States v. Chipps, 410 F.3d 438, 445 (8th Cir. 2005) (citing Miranda v. Arizona, 384 U.S. 436, 444 (1966)). Miranda warnings are required for official interrogations where a person has been "taken into custody or otherwise deprived of his freedom of action in any significant way." Stansbury v. California, 511 U.S. 318, 322 (1994) (quoting Miranda, 384 U.S. at 444).

Before questioning begins of a suspect in custody, law enforcement must inform the Defendant: (1) that he has the right to remain silent; (2) that his statements may be used against him in a court of law; (3) that he has the right to an attorney; and (4) that if he cannot afford an attorney, one will be appointed for him. Miranda, 384 U.S. at 444. To be a valid Miranda warning, law enforcement officers must use either this formulation of the warnings or "other procedures [that] are at least as effective in apprising accused persons of their right of silence and in assuring a continuous opportunity to exercise it." Id. at 467. After a Miranda warning is

---

[1] Defendant also filed a motion to suppress evidence obtained as a result of search and seizure. However, the Defendant withdrew that motion on the record in reliance on the Government's representation that no such evidence is in the possession of the Government.

3

given, if the suspect indicates that he wishes to assert these rights, the interrogation must stop. Id. at 473–74.

However, a defendant can waive Miranda rights as long as the waiver is voluntary, knowing, and intelligent. United States v. Bell, 477 F.3d 607, 612 (8th Cir. 2007). The Government must demonstrate by a preponderance of the evidence that the suspect's waiver meets these standards. Miranda, 384 U.S. at 473. "A waiver is 'knowing and intelligent' where it is made with full awareness of both the nature of the right being abandoned and the consequences of abandoning the right, and a waiver is 'voluntary' where the court can determine that the waiver was a product of the suspect's free and deliberate choice, and not the product of intimidation, coercion, or deception." Bell, 477 F.3d at 612 (citations and quotations omitted). To determine whether a waiver is voluntary, knowing, and intelligent depends on the totality of the circumstances. Moran v. Burbine, 475 U.S. 412, 421 (1986); Dickerson v. United States, 530 U.S. 428, 433-34 (2000).

"A waiver is voluntary if it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." United States v. Harper, 466 F.3d 634, 643 (8th Cir. 2006), cert. denied, 549 U.S. 1273 (2007). When analyzing voluntariness, the Court considers "whether a defendant's will was overborne by the circumstances surrounding the giving of a confession." Dickerson, 530 U.S. at 434. Furthermore, a statement is involuntary if it "was extracted by threats, violence, or . . . promises, such that the defendant's will was overborne and his capacity for self-determination critically impaired." United States v. Gallardo-Marquez, 253 F.3d 1121, 1123 (8th Cir. 2001) (quotations and citations omitted). Whether a defendant's will has been overborne is determined by looking at the totality of the circumstances, including both the conduct of law enforcement in exerting pressure to confess on the defendant and the

defendant's ability to resist that pressure. <u>United States v. Pierce</u>, 152 F.3d 808, 812 (8th Cir. 1998). Courts consider a multitude of factors including the age of the defendant, the level of education of the defendant, the lack of advice to the accused on his constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment. <u>Schneckcloth v. Bustamonte</u>, 412 U.S. 218, 226 (1973); <u>Tippitt v. Lockhart</u>, 859 F.3d 595, 598 (8th Cir. 1988); <u>see</u> <u>also</u> <u>United States v. Brave Heart</u>, 397 F.3d 1035, 1041 (8th Cir. 2005)(stating that "officers elicit confessions through a variety of tactics, including claiming not to believe a suspect's explanations, making false promises, playing on a suspect's emotions, using his respect for his family against him, deceiving the suspect, conveying sympathy, and even using raised voices . . . None of these tactics render a confession involuntary, however, unless the overall impact of the interrogation cause the defendant's will to be overborne.") (quotations and citation omitted).

## III.   DISCUSSION

Neither party disputes that the Defendant was in custody when he spoke to the FBI Agents therefore triggering the requirements of <u>Miranda</u>. The Defendant asks the Court to suppress the statements made on August 16, 2011 on two grounds. First, the Defendant contends that the <u>Miranda</u> warning was insufficient. Second, the Defendant asserts that the waiver of his <u>Miranda</u> rights was not knowing and voluntary.

Beginning with the adequacy of the <u>Miranda</u> warning, the Court concludes that the Advice of Rights form that Agent Ogden testified he gave the Defendant constituted a valid <u>Miranda</u> warning. The form provided that the Defendant had the right to remain silent, that the statements could be used against him in a court of law, that he had the right to an attorney, and that an attorney would be appointed for him if he could not afford one. <u>Miranda</u>, 384 U.S. at

444. In addition, the form advised the Defendant of his right to stop the questioning at any time and that if he decided at any time that he wanted to have a lawyer present he could.

Turning next to the question of whether the Defendant's waiver of his Miranda rights was knowing, intelligent, and voluntary, the Court finds that the totality of the circumstances supports the Government's contention that the Defendant's waiver was knowing, intelligent, and voluntary. The Court concludes that the waiver was knowing and intelligent because after the FBI agent read the Defendant his rights, the Defendant affirmatively waived his rights with "full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Syslo, 303 F.3d at 865. Here, Agent Ogden read the Defendant each of sentence of the Advice of Rights of form and then asked the Defendant if he had any questions about the rights raised in the sentence. Moreover, the Defendant signed the form which stated that, "I have read this statement and I understand what my rights are. At this time, I am willing to answer questions without a lawyer present." Thus, the Defendant expressly acknowledged that he understood his rights, including his right to an attorney, and still agreed to speak to law enforcement officers. See United States v. Gallardo, 495 F.3d 982, 991 (8th Cir. 2007)("An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver . . ."); United States v. Karbedeh, 2010 WL 3521984 at *12 (D. Minn. Aug. 11, 2010) (finding waiver to be knowing and intelligent in part because the defendant signed a form indicating that he understood all his Miranda rights and then waived those rights). Beyond the Defendant's written acknowledgement on the Advice of Rights form, other facts demonstrate that the waiver was knowing and intelligent. Agent Ogden testified that the Defendant did not appear to be under the influence of alcohol or drugs. Moreover, Agent Ogden stated that the Defendant appeared to understand his rights.

Furthermore, the Court also finds that the Defendant's "will was not overborne" by law enforcement conduct such that the waiver of his Miranda rights was not voluntary.  Dickerson, 530 U.S. at 434.   The evidence shows that no threats, promises, violence, or untruths were used to obtain the Defendant's statements. No evidence was presented to the Court showing that law enforcement exerted any pressure on the Defendant to speak with them.  In fact, Agent Ogden testified that the Defendant was cooperative during the interview demonstrating that he did not feel compelled to speak.  Additionally, the entire interview lasted less than a half an hour which cannot be considered so lengthy that undue pressure was exerted on the Defendant.

Lastly, the Court finds that the Defendant did not invoke his right to counsel.  The Miranda right to counsel only attaches when a suspect invokes the right during an interrogation by making a clear and unequivocal request for counsel.  See Davis v. United States, 512 U.S. 452, 458-59 (1994).  Here, no such request was made. The Defendant in no way indicated his desire to have counsel assist him in answering questions during any portion of the interview.

## IV.   CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED**

1. That Defendant's Motion to Suppress Statements, Admissions and Answers [Docket No. 29] be **DENIED**.

Dated: October 26, 2011                               s/Leo I. Brisbois

                      LEO I. BRISBOIS
                      United States Magistrate Judge

# N O T I C E

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by October 10, 2011**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.